SIMS *et al. vs.* HUTCHESON *et al.*, Road Commissioners.

1. Prior to the act of 1881, it was sufficient to post notice of the place of meeting of road commissioners of a district for fining defaulters, under §626 of the Code; and a notice having been thus given before the passage of the act of 1881, was not affected thereby.

2. Where notice was given, and the defaulter attended the commissioners' court, the fact that the court was held within, instead of after, twenty days from the road-working, did not render it invalid. Mere irregularities in this species of court do not matter.

(*a.*) This is unlike a justice's court.

(*b.*) Semble that section 658, par. 3 of the Code, should read "within," instead of "after" twenty days.

3 A notice to work on the road need not be in writing; if the person notified received the notice, and was told by the overseer when and where to work and what tools to bring, and actually appeared, that was sufficient.

4. Where a person was notified to work the roads on the day before he was required to appear, and did not appear thereunder, this was sufficient, although he was not notified twenty-four hours before

what would be the usual hour for beginning labor on the next day.

5. When the person so notified appeared late, and was directed to go to work, but would not, and went home, apparently because the overseer threatened to report him for tardiness, this was no reason for such conduct.

6. Where the commissioners' court fine a defaulter, the fine may be enforced by execution or by imprisonment

May 13, 1884.

Roads and Bridges. County Matters. Notice. Courts. Before Judge POTTLE. Oglethorpe Superior Court. October Term, 1883.

Moses Sims filed his petition for a *certiorari* to the judgment of a road commissioners' court against him as a defaulter. The answer of the commissioners showed, in brief, as follows:

On September 21, 1881, the road overseer returned Sims and certain others as defaulters, at a working of the public roads on September 20. Thereupon the district commissioners issued a written notice, directed to the defaulters reported, and posted it at the post-office and two other public places in the district,—at two of them on September 24, and at the other a day or two later. This notice called on the defaulters to appear at a commissioners' court to be held on October 5, and on that day it was held. Sims and the others appeared and urged the following excuses:

(1.) That they were improperly warned or summoned.

(2.) That they were not allowed to work by the overseer after their appearance.

(3.) That they were not served with a written notice by a constable or road overseer three days before the commissioners' court, and did not waive notice.

One of them also claimed to be under age.

The evidence showed that, about two o'clock on the day before the working of the road, the overseer notified Sims and the others verbally of the time and place of meeting, the road to be worked and the tools they were to

bring. The defaulters did not appear till between nine and ten o'clock, some two or two and a half hours after the other hands had commenced work. The overseer told them to go to work, and he would only return them for the lost time. Thereupon they did not go to work at all, but left and returned home.

Sims was fined $3.00. One Williams gave notice that he had a landlord's lien on all the goods of the defaulters. The commissioners thereupon issued a warrant against Sims, requiring his imprisonment for ten days, but the answer to the *certiorari* showed that the privilege of release on payment of the fine was allowed. Sims thereupon applied for a *certiorari*

The court dismissed the *certiorari*, and Sims *et al.* excepted.

W. M. Howard; J. C. Reed; Samuel Lumpkin; J. J. Eckford, for plaintiffs in error.

J. W. Echols, for defendants

Jackson, Chief Justice.

The judge of the superior court, on a *certiorari* to the road commissioners, sanctioned their action in fining the plaintiff in error, and when he refused to pay it, in sending him to jail for ten days. Error is assigned on that judgment.

1. The notice was legal at the time given, it being posted according to the Code, §626. The act of 1881, altering the mode of notice to personal notice, was passed after this notice was given under that section.

2. The commissioners' court was held within twenty days, instead of after, as the Code reads, section 658, par.

3. The important point is, did the defaulter have notice, and was he there? If so, in this sort of court all mere irregularities do not matter. This road court is wholly unlike the justices' courts under the constitution of 1868,

where the time fixed was of the essence of the jurisdiction of the court. Hence, the cases cited in respect to those courts, as then organized under that constitution, have no application to the meeting of road commissioners to punish defaulters. Besides, the better construction of section 658 would be, perhaps, within twenty days. The time within which excuses were to be rendered by defaulters, under the act of December 13, 1818, section 5, Cobb's Digest, p. 948, was within twenty days. The codifiers put it "after twenty days," but the act itself "within twenty days." There is better sense in reading it "within" instead of "after." "After" is wholly indefinite. Six months, a year, would be after the default; "within" would have the matter fresh in memory, and easily determined.

But it is immaterial, where notice was given and the party attended.

3. The notice to work need not have been in writing. Code, §§ 614, 615. Neither the act of 1818, nor the Code expressly requires it. This plaintiff in error got the notice and was told by the overseer when and where to work, and what tools to bring. When he appeared, that answered all the purposes of the notice.

4. He was notified the day before. The statute says one day. True, it was not as early in the morning as would make twenty hours before the time people ought to begin a day's work in the morning : but the day before answered the purpose and brought him there. Code, §614.

5. When he got there late. he was directed to go to work, but would not, and went home, it seems, because the overseer threatened to report him for tardiness. What sort of reason was this for such contumacy ?

6. This court has held that if the fine was not paid, imprisonment was legal, and so is the Code, §619.* It may be enforced by execution or by imprisonment, or the defaulter may be punished by fine or jail. If paid at any time, the imprisonment was to cease in this case. The

* See 70 *Ga.,* 407

Code also declares that execution or other process may be issued against the convicted (Code, §658, par. 3), of course to enforce the fine. The objection raised is that the punishment was changed. The record shows that it was simply enforced.

Judgment affirmed.